**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| RONALD J. MULDER, | Case No. 3:18-CV-0386-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | [ECF No. 34] |
| DR. MARKS, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Ronald Mulder ("Mulder") against Defendants Dana Marks ("Marks"), James Dzurenda ("Dzurenda"), Romeo Aranas ("Aranas"), and Martin Naughton ("Naughton") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 34, 36.)[2] Mulder opposed the motion, (ECF No. 38), and Defendants replied. (ECF No. 40.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 34), be granted.

## I.    FACTUAL BACKGROUND

Mulder is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated the Northern Nevada Correctional Center ("NNCC"). On August 14, 2018, Mulder filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Mulder was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 5.) Specifically, Mulder alleges an Eighth Amendment deliberate indifference to serious medical needs claim and an Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, claim based on denial of treatment for Hepatitis C ("Hep-C"). (ECF No. 5.)

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 36 consists of Mulder's medical records filed under seal.

Hep-C is a blood borne pathogen transmitted primarily by way of percutaneous exposure to blood. Chronic Hep-C is diagnosed by a qualified medical practitioner. Chronic Hep-C results in liver fibrosis. (ECF No. 34-7 at 2 (Declaration of Dr. Minev).) Fibrosis is the initial stage of liver scarring. (*Id.*) Chronic Hep-C builds up fibrosis (scar tissue) in the afflicted person's liver. (*Id.*) When the fibrosis increases, it can lead to cirrhosis of the liver, a liver disease that forestalls common liver function. (*Id.*) When liver cells are not functioning, certain clinical signs will appear on the patient, which include but are not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (*Id.*)

Medical Directive ("MD") 219 governs treatment of Hep-C at the NDOC. (*See* ECF No. 34 at 6.) At the time Mulder filed his initial grievance related to his Hep-C treatment, inmates that tested positive for Hep-C were enrolled in the Infectious Disease Chronic Clinic for Hepatitis C. (*Id.*) A committee made up of at least three senior members of the medical department reviewed each Hep-C positive inmate and evaluated treatment options. (*Id.*)

A non-invasive method of procuring a patient's Chronic Hep-C progression, in addition with the clinical signs, is through the Aspartate Aminotransferase Platelet Ratio Index ("APRI") formula. (ECF No. 34-7 at 3.) To calculate a patient's APRI score, the patient's blood platelet count, which is obtained through a blood test, is necessary. (*Id.*) An APRI score is calculated using the AST to Platelet Ratio Index. (*Id.*) NDOC prioritized treatment based on an inmates APRI score. (ECF No. 34 at 6-7.) Inmates with an APRI score greater than 2 were prioritized for direct acting antiviral treatment ("DAA"). (*Id.* at 7.) DAA treatment, such as Epclusa, is an FDA-approved treatment for Hep-C. (ECF No. 34-3 at 16 (defining DAA).) Inmates with a score of less than 2 were not prioritized for the Hep-C DAA treatment protocols but did receive treatment and monitoring through the Hep-C Clinic. (ECF No. 34 at 7.)

2

The current version of MD 219 ensures each inmate has been or is tested for Hep-C, and that those inmates who test positive, and who do not make the voluntary choice to opt out of treatment, will be treated with DAAs. (ECF No. 34-3 at 15-22.) The policy applies to all inmates unless there are medical issues that would make doing so cause more harm. (*Id.*) MD 219 established three priority levels for DAA treatment. This priority level system guarantees that all Hep-C patients will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary. (*Id.* at 20.)

Mulder reports he was diagnosed with HCV in July of 2016. (ECF No. 38-1 at 44.) In November 2016, Mulder filed a grievance stating he was diagnosed with elevated liver enzymes and asked for treatment for his HCV. (ECF No. 34-2.) The response to the grievance stated that Mulder's APRI score was 0.276 and as such he did not meet the criteria under MD 219 for HCV treatment. (*Id.* at 4.)

Mulder was enrolled in NDOC Chronic Disease Clinic for HCV in 2017 where he was regularly monitored and evaluated for a change in his condition. (*See* ECF No. 36-1 (sealed).) Blood tests conducted in March 2018 revealed Mulder's APRI score was 0.2 and he did not exhibit any symptoms of decreased liver functioning. (ECF No. 36-2 at 3 (sealed).) Therefore, Mulder was not a candidate for the advanced NDOC Chronic HCV treatment at that time. (ECF No. 34-7 at 4.)

Lab results from February 2021 revealed Mulder's fibrosis score was F0 indicating no fibrosis. (ECF No. 36-3 at 2 (sealed).) Mulder was approved for DAA treatment in September 2021. (ECF No. 36-4 at 2 (sealed).) An abdominal ultrasound conducted in October 2021 showed no masses or liver disease. (ECF Nos. 36-5 at 2 (sealed); 34-5 at 3.) Lab results dated April 7, 2022, show no detectable HCV in Mulder's blood. (ECF No. 36-6 (sealed).)

///

Defendant Marks, Senior Physician for the NDOC, filed a declaration in support of the motion for summary judgment, stating Mulder has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Marks stated she is not, and has not been, a member of the Hep-C review committee tasked with the responsibility of approving treatment for Hep-C. Marks did not prescribe advanced Hep-C treatment, has never diagnosed Mulder as suffering from advanced cirrhosis of the liver, and has never diagnosed Mulder as suffering from symptoms associated with HCV infection. Marks stated at the time she saw Mulder he did not qualify for advanced treatment and his APRI score was 0.20, which is not an indication of advanced cirrhosis and is extremely low. Finally, Marks stated that she never told Mulder that he was not treated due to the cost of treatment. (ECF No. 34-4.)

Defendant Naughton, Senior Physician for the NDOC, filed a declaration in support of the motion for summary judgment, stating Mulder has been under the continuous care of many doctors employed by the NDOC and has been seen and treated for various ailments over his time at NNCC. Naughton was a member of the Hep C committee, which only reviewed inmates when they qualified for treatment under MD 219 and were referred by their treating physician. Naughton states he never told Mulder that he was not treated due to the cost of treatment. His APRI score at the time Naughton saw him was 0.20, which is not an indication of advanced cirrhosis. Naughton has never diagnosed Mulder as suffering from advanced cirrhosis of the liver. Naughton discussed the APRI scoring, Fibrosure testing, and pros and cons of treatment with Mulder prior to him beginning treatment. Mulder's liver ultrasound did not show liver disease as a result of HCV infection. (ECF No. 34-5.)

Defendant Aranas, former NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating he did not recall having direct interactions with Mulder and did not treat Mulder. Aranas further stated he did not deny treatment to Mulder, as decisions for treatment were made by the Utilization Review Panel or the

1    treating physician. (ECF No. 34-6.)

2        Michael Minev, NDOC's current Medical Director, filed a declaration in support of

3    the motion for summary judgment, stating as follows: if a patient's APRI score is above

4    0.5, there is likely some liver damage (fibrosis) and if the APRI score is above 1.5, the

5    patient likely has or is quickly approaching cirrhosis of the liver. The APRI score is not

6    definitive but is a reliable indicator of liver fibrosis. As part of his duties, Minev oversees

7    the Chronic Hep-C treatment program at NDOC. He has reviewed test results and

8    medical records of NDOC inmates to determine who required advanced forms of Hep-C

9    treatment. In addition to APRI scores, Minev also considers the inmates' clinical signs of

10   forestalled or reduced liver function. He almost always declined to recommend an NDOC

11   inmate with Hep-C, who has an APRI score near or below 1.0 for advanced forms of Hep-

12   C treatment due to risk that drug intervention may cause to a patient with Hep-C. All

13   inmates who test positive for Hep-C and are otherwise medically indicated receive

14   advanced treatment. (ECF No. 34-7.)

15       Moreover, as to Mulder specifically, Minev stated he reviewed Mulder's medical

16   records and can attest that Mulder suffered from Chronic Hep-C and his APRI score,

17   based on blood test results in March 2018, was 0.20. Mulder did not exhibit any symptoms

18   of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3)

19   gynecomastia; (4) ascites; or (5) jaundice. Based on Mulder's APRI score and lack of

20   clinical signs indicating decreased liver function, Mulder was not a candidate for Hep-C

21   treatment at the time of his grievance. Mulder never showed signed of severe liver

22   disease, according to his medical records. (ECF No. 34-7 at 4.)

23       Defendant Dzurenda, former NDOC Director, filed a declaration in support of the

24   motion for summary judgment stating he never had contact with Mulder, nor was he aware

25   of his condition. Dzurenda did not respond to any grievances on this matter. He was not

26   part of any committee that could have ordered treatment to Mulder. The Medical Director

27   of NDOC is responsible for care of the inmates. As Director, Dzurenda was not

28   responsible for the formulation of Medical Directives and he had no authority to order

5

1    HCV treatment for Mulder. (ECF No. 34-8.)

2        Deposition testimony from Defendant Naughton, medical doctor for the NDOC,

3    states as follows: Naughton first saw Mulder regarding his Hep-C on October 9, 2019.

4    (ECF No. 38-1 at 32.) Mulder's APRI score as of September 2013 was 0.25 and as of

5    July 2018 it was 0.28, which would not have qualified him for DAA treatment under the

6    MD 219 policy. (*Id.* at 33.) His FibroSure score also would not have qualified him for DAA

7    treatment under the MD 219 policy. (*Id.*) Naughton responded that he would have

8    provided Mulder with DAA medication if he had been allowed to under the policy. (*Id.* at

9    33-34.) Naughton did not have an opinion as to whether Mulder was harmed by a delay

10   in receiving DAA treatment. (*Id.* at 43.)

11       In support of his opposition to the motion for summary judgment, Mulder includes

12   the expert report of Dr. Amanda Cheung. (ECF No. 38-2.) Dr. Cheung's report discusses

13   the standard of care for Hep-C treatment. The summary of her report is as follows:

14           Based on the review of the medical documents available on these six
             individuals, it is my opinion that Hep-C treatment was delayed. If these
15           individuals were seen in the outpatient sector, treatment would have been
             recommended immediately upon diagnosis regardless of fibrosis staging.
16           Currently, the purpose of fibrosis staging is to determine the correct type
             and length of therapy, rather than to determine whether to provide therapy.
17

18   (*Id.* at 7.) Dr. Cheung's report additionally states that "chronic Hep-C infection carries

19   increased morbidity and mortality risk. Once there is progression to cirrhosis, patients

20   may develop liver failure and liver cancer. Even after Hep-C cure, the risk of liver cancer

21   persists. Thus, the ultimate goal is to achieve Hep-C cure prior to development of

22   cirrhosis." (*Id.* at 6.) Importantly, Dr. Cheung's report <u>does not</u> address whether Mulder

23   suffered any harm based on or because of the delay in treatment.

24       Finally, in support of his opposition, Mulder provides the deposition transcripts from

25   Defendant Minev and from Defendant's expert, Dr. Chad Zawitz. (ECF Nos. 38-3, 38-5.)

26   The depositions focus more generally on treatment of Hep-C and NDOC's policy but do

27   not specifically address Mulder. (*See id.*)

28   ///

## II.    PROCEDURAL HISTORY

On August 14, 2018, Mulder initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Mulder was incarcerated at NNCC. (ECF Nos. 1, 5.) On screening, the District Court permitted Mulder to proceed with his complaint which alleges: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against all Defendants; and (2) an ADA claim against all Defendants. (ECF No. 4.)

Around the same time Mulder filed his complaint, many other individuals in the custody of the NDOC filed similar actions alleging that NDOC's policy for treating Hep-C amounts to deliberate indifference in violation of the Eighth Amendment. (ECF No. 12.) As a result, the Court consolidated numerous actions, including Mulder's case, for the purpose of conducting consolidated discovery. (*Id.; see also In Re Hep-C Prison Litigation*, 3:19-CV-00577-MMD-CLB.)

Following an additional period of discovery, on June 15, 2022, Defendants filed their motion for summary judgment arguing Mulder cannot prevail as: (1) Mulder was treated appropriately and in accordance with the medical directives and standards of care; (2) Mulder cannot prevail on his ADA claim; (3) many of the Defendants were not treating physicians and thus did not personally participate in the alleged constitutional violations; and (4) Defendants are entitled to qualified immunity. (ECF No. 34.) Mulder opposed the motion, (ECF No. 38), and Defendants replied. (ECF No. 40.)

## III.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material.

7

*Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary

materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

9

1    *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

2    the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

3    Nevertheless, the court will view the cited records before it and will not mine the record

4    for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

5    does not make nor provide support for a possible objection, the court will likewise not

6    consider it).

7    **IV.    DISCUSSION**

8          On June 15, 2022, Defendants filed their motion for summary judgment arguing

9    Mulder cannot prevail as: (1) Mulder was treated appropriately and in accordance with

10   the medical directives and standards of care; (2) Mulder cannot prevail on his ADA claim;

11   (3) many of the Defendants were not treating physicians and thus did not personally

12   participate in the alleged constitutional violations; and (4) Defendants are entitled to

13   qualified immunity. (ECF No. 34.)

14         In opposition, Mulder asserts that all Defendants denied him Hep-C treatment for

15   years—a medically unacceptable course of treatment under the circumstances—and did

16   so knowing the excessive risks to his health. (ECF No. 38.) Finally, Mulder asserts

17   Defendants violated the ADA by "discriminating against him because of his HCV." (*Id.* at

18   2.)

19         **A.    Deliberate Indifference to Serious Medical Needs**

20         The Eighth Amendment "embodies broad and idealistic concepts of dignity,

21   civilized standards, humanity, and decency" by prohibiting the imposition of cruel and

22   unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal

23   quotation omitted). The Amendment's proscription against the "unnecessary and wanton

24   infliction of pain" encompasses deliberate indifference by state officials to the medical

25   needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that

26   "deliberate indifference to a prisoner's serious illness or injury states a cause of action

27   under § 1983." *Id.* at 105. Article 1, Section 6 of the Nevada Constitution mirrors the Eighth

28   Amendment's Cruel and Unusual Punishment Clause, and provides protections that are

coextensive with the Eighth Amendment of the United States Constitution. Courts in this district have applied the same legal standards to the cruel and unusual punishment corollary included in Article 1, Section 6 of the Nevada Constitution as are applied to the corollaries in the United States Constitution. *See, e.g, Fowler v. Sisolak*, No. 2:19-cv-01418-APG-DJA, 2020 WL 6270276, at *4 (D. Nev. Oct. 26, 2020).

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end

and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1.    Analysis

Starting with the objective element, the parties agree that Mulder's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Mulder cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Mulder's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Mulder's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Mulder to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Mulder received while incarcerated related to his Hep-C. (*See* ECF Nos. 36-1, 36-2, 36-3, 36-4, 36-5, 36-6, 36-7 (sealed).) According to this evidence, Mulder was enrolled in NDOC Chronic Disease Clinic for HCV in 2017 where he was regularly monitored and evaluated for a change in his condition. (*See* ECF No. 36-1 (sealed).) Blood tests conducted in March 2018 revealed Mulder's APRI score was 0.2 and he did not exhibit any symptoms of decreased liver functioning. (ECF No. 36-2 at 3 (sealed).) Therefore, Mulder was not a candidate for the advanced NDOC Chronic HCV treatment at that time. (ECF No. 34-7 at 4.)

Lab results from February 2021 revealed Mulder's fibrosis score was F0 indicating no fibrosis. (ECF No. 36-3 at 2 (sealed).) Mulder was approved for DAA treatment in September 2021. (ECF No. 36-4 at 2 (sealed).) An abdominal ultrasound conducted in October 2021 showed no masses or liver disease. (ECF Nos. 36-5 at 2 (sealed); 34-5 at 3.) Lab results dated April 7, 2022, show no detectable HCV in Mulder's blood. (ECF No. 36-6 (sealed).)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Mulder's Hep-C. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Mulder to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Mulder's opposition primarily focuses on MD 219 and his assertion that medical standards required immediate treatment. (ECF No. 38 at 8-10.) Mulder's opposition reiterates his claim, without any admissible medical evidence, that the delay in providing him treatment for his Hep-C caused him further damage—asserting Mulder developed cirrhosis although there is no record of this diagnosis contained anywhere in the record.

1  (*Id.* at 10.) To prove deliberate indifference, however, Mulder must show that a delay in

2  treatment <u>caused</u> further injury. *See Jett*, 439 F.3d at 1096. Mulder's own expert witness

3  does not allege that he sustained damage because of the alleged delay. (*See* ECF No.

4  38-2 at 7.) The expert's discussion of harm was in a general section relating to the

5  standard of care, and not directed to Mulder specifically. (*Id.* at 6.)

6      Aside from his own assertions, Mulder provides no further evidence or support that

7  a delay in treatment for his Hep-C <u>caused</u> him any damage. He has not come forward

8  with evidence to show Defendants knew of an excessive risk to his health and disregarded

9  that risk. The evidence before the Court shows Mulder was treated for his Hep-C through

10  monitoring and other actions and there is no evidence showing that his Hep-C or any

11  delay in providing treatment was <u>the cause</u> of any damage. Therefore, Mulder has failed

12  to meet his burden on summary judgment to establish that prison officials were

13  deliberately indifferent to his medical needs as he failed to come forward with any

14  evidence to create an issue of fact as to whether Defendants deliberately denied, delayed,

15  or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

16      Moreover, to the extent that Mulder's assertions in this case are based upon his

17  disagreement with Defendants' choice of treatment, this does not amount to deliberate

18  indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff

19  simply disagree about the course of treatment, only where it is medically unacceptable

20  can the plaintiff prevail. *Id.* Therefore, Mulder has failed to show that the NDOC's "chosen

21  course of treatment was medically unacceptable under the circumstances." *Id.*

22  Accordingly, Mulder fails to meet his burden to show an issue of fact that Defendants

23  were deliberately indifferent to his needs because Mulder has only shown that he

24  disagrees between alternative courses of treatment, such as being given drug

25  intervention treatment as opposed to having his Hep-C monitored for progression.

26      Based on the above, the Court recommends that Defendants' motion for summary

27  judgment as to the medical deliberate indifference claim be granted.

28  ///

14

### B.    ADA

The ADA, 42 U.S.C. § 12132, applies in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that a prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006).

However, the Ninth Circuit has held that "the ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added); *see also Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister,* 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Mulder's response states that he suffered the disability of HCV, was qualified to receive treatment, was excluded from receiving treatment for HCV, and such exclusion was based on his HCV disability. (ECF No. 38 at 11.) Thus, Mulder's ADA claim is based on his allegation that Defendants failed to give him adequate medical treatment for his disability. Mulder's ADA claim is simply making "an end run around the Eighth Amendment". As discussed above, Defendants were not deliberately indifferent to his serious medical needs and Mulder cannot use the ADA as an alternative basis to recover damages.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the ADA claim be granted.[3]

**V.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 34), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VI.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 34), be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: _October 13, 2022_.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3]    Because the Court finds that Mulder's claims fail on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.